## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BENJAMIN POWERS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> TOWNE MORTGAGE COMPANY, <br><br> Defendant. | Case No.: <br><br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Benjamin Powers ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint, against Defendant Towne Mortgage Company ("Defendant") based on personal knowledge, investigation of counsel, and information and belief, and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action to hold Defendant responsible for disclosing Plaintiff's and thousands of similarly situated individuals' sensitive, confidential personally identifiable information ("PII") to cybercriminals in a foreseeable, preventable data breach.

2.      On June 7, 2025, hackers targeted and accessed Defendant's network

1

servers without authorization and stole Plaintiff's and Class Members' sensitive, confidential PII stored therein, including, upon information and belief, full names, dates of birth, Social Security numbers, financial account numbers, and loan numbers (collectively, "Private Information"), causing widespread injuries to Plaintiff and Class Members (the "Data Breach").

3.      Defendant is a  full-service mortgage lender based in Troy, Michigan.

4.      Plaintiff and Class Members are current and former customers of Defendant who, as a condition of receiving loans from Defendant, were and are required to entrust Defendant with their sensitive, non-public Private Information. Defendant could not perform its operations or provide its revenue-generating services, without collecting Plaintiff's and Class Members' Private Information and retains it for many years, at least, even after the customer relationship has ended.

5.      Businesses like Defendant that handle Private Information owe the individuals to whom that data relates a duty to adopt reasonable measures to protect such information from disclosure to unauthorized third parties, and to keep it safe and confidential. This duty arises under contract, statutory and common law, industry standards, representations made to Plaintiff and Class Members, and because it is foreseeable that the exposure of Private Information to unauthorized persons—and especially hackers with nefarious intentions—will harm the affected individuals, including but not limited to by the invasion of their private health and

2

financial matters.

6. Defendant breached these duties owed to Plaintiff and Class Members by failing to safeguard their Private Information it collected and maintained, including by failing to implement industry standards for data security to protect against, detect, and stop cyberattacks, which failures allowed criminal hackers to access and steal Plaintiff's and Class Members' Private Information from Defendant's care.

7. Defendant detected the cyberattack of its network on June 7, 2025, whereby unauthorized actors accessed Defendant's systems and acquired files containing Plaintiff's and Class Members' Private Information.

8. Defendant failed to adequately protect Plaintiff's and Class Members' Private Information, and failed to even encrypt or redact this highly sensitive data. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect its students' sensitive data.

9. Defendant maintained the Private Information in a reckless manner. In particular, Private Information was maintained on and/or accessible from Defendant's network in a condition vulnerable to cyberattacks. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus, Defendant

knew that failing to take reasonable steps to secure the Private Information left it in a dangerous condition.

10.     Hackers targeted and obtained Plaintiff's and Class Members' Private Information from Defendant's network because of the data's value in exploiting and stealing identities. As a direct and proximate result of Defendant's inadequate data security and breaches of its duties to handle Private Information with reasonable care, Plaintiff's and Class Members' Private Information has been accessed by hackers and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiff and Class Members will remain for their respective lifetimes.

11.     The harm resulting from a cyberattack like this Data Breach manifests in numerous ways including identity theft and financial fraud, and the exposure of an individual's Private Information due to a data breach ensures that the individual will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of his or her life. Mitigating that risk, to the extent it is even possible to do so, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take several additional prophylactic measures.

12.     As a result of the Data Breach, Plaintiff and Class Members suffered and will continue to suffer concrete injuries in fact, including but not limited to (a)

financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) actual identity theft and fraud; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress in with dealing with the Data Breach; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and subject to further breaches, so long as Defendant fails to undertake adequate measures to protect the student data it collects and maintains.

13.    To recover from Defendant for these harms, Plaintiff, on his own behalf and on behalf of the Class as defined herein, brings claims for negligence/negligence *per se*, breach of implied contract, breach of fiduciary duty, and unjust enrichment, to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' Private Information in its care.

14.    Plaintiff and Class Members seek damages and equitable relief requiring Defendant to (a) disclose the full nature of the Data Breach and types of Private Information exposed; (b) implement data security practices to reasonably guard against future breaches; and (c) provide, at Defendant's expense, all Data Breach victims with lifetime identity theft protection services.

## PARTIES

### *Plaintiff Benjamin Powers*

15.     Plaintiff Benjamin Powers is an adult individual who at all relevant times has been a citizen and resident of Kalamazoo, Michigan.

16.     Plaintiff is a customer of Defendant.

17.     Plaintiff provided his Private Information to Defendant prior to the Data Breach as a condition of and in exchange for receiving services with Defendant.

18.     Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

19.     At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its network systems with inadequate data security, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

20.     Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff now monitors his financial and credit

statements multiple times a week and has spent hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

21.    Plaintiff further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff is at a present risk and will continue to be at risk of identity theft and fraud for years.

22.    The risk of identity theft is impending and has materialized, as cybercriminals targeted, staged, and accessed Plaintiff's and Class Members' Private Information in the Data Breach to commit identity theft and other crimes against them. Plaintiff further believes his Private Information, and that of Class Members, was and will be sold and disseminated on the dark web as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

23.    The Data Breach has also caused Plaintiff to suffer fear, anxiety, and stress about his Private Information now being in the hands of cybercriminals, compounded by the fact that Defendant still has not fully informed him of key details about the Data Breach's occurrence or the information stolen.

24.    Moreover, since the Data Breach, Plaintiff has experienced a sharp uptick in suspicious spam emails and texts that he reasonably believes is a result of the Data Breach.

### *Defendant Towne Mortgage Company*

25.     Defendant is a Michigan corporation with its headquarters and principal place of business at 888 W Big Beaver Rd, Suite 310, Troy, Michigan 48084.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class, including Plaintiff, are citizens of states different from Defendant.

27.     This Court has personal jurisdiction over Defendant because Defendant has its headquarters and principal place of business in this District, and Defendant engaged in substantial activity in this District.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1)-(d) because Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### A. Defendant Owed Duties to Adopt Reasonable Data Security Measures for Private Information.

29.     Defendant is full-service mortgage lender based in Troy, Michigan.

30.     Plaintiff and Class Members are current and former customers of

Defendant, who provided their Private Information to Defendant prior to June 7, 2025.

31.    As a condition of receiving loans from Defendant, Defendant's customers, including Plaintiff and Class Members, were required to entrust Defendant with highly sensitive Private Information, including their names, dates of birth, Social Security numbers, and financial account information.

32.    In exchange for receiving Plaintiff's and Class Members' Private Information, Defendant promised to safeguard the sensitive, confidential data and use it only for authorized and legitimate purposes, and to delete such information from its systems once there was no longer a need to maintain it.

33.    The information Defendant held in its computer networks at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

34.    At all relevant times, Defendant knew it was storing and using its networks to store and transmit valuable, sensitive Private Information belonging to Plaintiff and Class Members, and that as a result, its systems would be attractive targets for cybercriminals.

35.    Defendant also knew that any breach of its information technology network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the individuals whose Private Information was

compromised, as well as intrusion into those individuals' highly private financial information.

36.     Upon information and belief, Defendant made promises and representations to its customers, including Plaintiff and Class Members, that the Private Information collected from them in connection with their loan with Defendant would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it were no longer required to maintain it.

37.     Plaintiff and Class Members relied on Defendant's promises, expressly worded and implied through its conduct in requiring Plaintiff and Class Members to provide their Private Information, to implement reasonable practices to keep their sensitive Private Information confidential and securely maintained, to use this information for necessary purposes only and make only authorized disclosures of this information, and to delete Private Information from Defendant's systems when no longer necessary for its legitimate business purposes.

38.     But for Defendant's promises to keep Plaintiff's and Class Members' Private Information secure and confidential, Plaintiff and Class Members would not have entrusted their Private Information to Defendant. Customers in general demand security to safeguard their Private Information, especially when sensitive financial information is involved.

10

39.     Based on the foregoing representations and warranties and to obtain loans from Defendant, Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its promises and obligations to keep such information confidential and protected against unauthorized access.

40.     Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information. To that end, Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

41.     Defendant derived economic benefits from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform its operations, including authorizing loans.

42.     By obtaining, using, and benefiting from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting that Private Information from unauthorized access and disclosure.

43.     Defendant had and has a duty to adopt reasonable measures to keep Plaintiff's and Class Members' Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor, and verify the integrity

of its IT networks, and train employees with access to use adequate cybersecurity measures.

44.     Defendant had and has obligations created by the FTC Act, 15 U.S.C. § 45, common law, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and protected from unauthorized disclosure. Defendant failed to do so.

**B. Defendant Failed to Adequately Safeguard Plaintiff's and Class Members' Private Information, Causing the Data Breach.**

45.     On June 7, 2025, Defendant detected unauthorized access to its IT Network.[1] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[2]

46.     After a forensic investigation and manual review, Defendant confirmed on Oct. 14, 2025, that files containing customer data may have been copied from its systems.[3]

47.     On or around July 30, 2025, the BlackByte ransomware group claimed responsibility and posted sample data on its dark web portal indicating the severity and criminal nature of the Data Breach.

48.     Upon information and belief, the following types of Private Information

---

[1] https://www.mass.gov/doc/2025-1925-towne-mortgage-company/download (last visited Nov. 16, 2025).
[2] *Id.*
[3] *Id.*

were compromised as a result of the Data Breach: name, Social Security number, financial account number, loan number, and date of birth.

49.     Plaintiff's and Class Members' Private Information was targeted, accessed, and stolen by cybercriminals in the Data Breach. Criminal hackers accessed and acquired confidential files containing Plaintiff's and Class Members' Private Information from Defendant's network systems, where they were kept without adequate safeguards and in unencrypted form.

50.     Defendant could have prevented this Data Breach by properly training personnel, securing account access through measures like phishing-resistant (i.e., non-SMS text based) multi-factor authentication ("MFA") for as many services as possible, training users to recognize and report phishing attempts, implementing recurring forced password resets, and/or securing and encrypting files and file servers containing Plaintiff's and Class Members' Private Information, but failed to do so.

51.     As the Data Breach evidences, Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information it collected and maintained from Plaintiff and Class Members, such as phishing-resistant MFA, standard monitoring and altering techniques, encryption, or deletion of information when it is no longer needed. These failures by Defendant allowed and caused cybercriminals to target Defendant's network and exfiltrate files

containing Plaintiff and Class Member's Private Information.

52.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing Plaintiff's and Class Members' Private Information, using controls like limitations on personnel with access to sensitive data and requiring phishing-resistant MFA for access, training its employees on standard cybersecurity practices, and implementing reasonable logging and alerting methods to detect unauthorized access.

53.     For example, if Defendant had implemented industry standard logging, monitoring, and alerting systems—basic technical safeguards that any collecting company is expected to employ—then cybercriminals would not have been able to perpetrate malicious activity in Defendant's network systems for the nearly period it took to carry out the Data Breach, including the reconnaissance necessary to identify where Defendant stored Private Information, installation of malware or other methods of establishing persistence and creating a path to exfiltrate data, staging data in preparation for exfiltration, and then exfiltrating that data outside of Defendant's system without being caught.

54.     Defendant would have recognized the malicious activities detailed in the preceding paragraph if it bothered to implement basic monitoring and detection systems, which then would have stopped the Data Breach or greatly reduced its impact.

14

55.    Further, upon information and belief, had Defendant required phishing-resistant MFA, and/or trained its employees on reasonable and basic cybersecurity topics like common phishing techniques or indicators of a potentially malicious event, cybercriminals would not have been able to gain initial access to Defendant's network or Plaintiff's and Class Members' Private Information.

56.    Defendant's tortious conduct and breach of contractual obligations, as detailed herein, are evidenced by its failure to recognize the Data Breach until cybercriminals had already accessed Plaintiff's and Class Members' Private Information, meaning Defendant had no effective means in place to ensure that cyberattacks were detected and prevented.

## C. Defendant Knew of the Risk of a Cyberattack because Businesses in Possession of Private Information are Particularly Suspectable.

57.    Defendant's negligence in failing to safeguard Plaintiff's and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing such data.

58.    Private Information of the kind accessed in the Data Breach is of great value to hackers and cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the dark web.

59.    Private Information can also be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and financial

records. This may be accomplished alone, or in combination with other personal information that is connected, or linked to an individual, such as his or her birthdate, birthplace, and mother's maiden name.

60.    Data thieves regularly target entities that collect Private Information like Defendant due to the highly sensitive information that such entities maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

61.    Data breaches and identity theft have a crippling effect on individuals, and detrimentally impact the economy as a whole.

62.    Cyber-attacks against businesses that collect Private Information such as Defendant are targeted and frequent. According to Contrast Security's 2023 report *Cyber Bank Heists: Threats to the financial sector*, "Over the past year, attacks have included banking trojans, ransomware, account takeover, theft of client data and cybercrime cartels deploying 'trojanized' finance apps to deliver malware in spear-phishing campaigns."[4]

63.    In light of past high profile data breaches at industry-leading companies, including, for example, Microsoft (250 million records, December

---

[4] Contrast Security, "Cyber Bank Heists: Threats to the financial sector," pg. 5, https://www.contrastsecurity.com/hubfs/Cyber%20Bank%20Heists%20Report%20 2023.pdf?hsLang=en (last visited Nov. 18, 2025).

2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or, if acting as a reasonable university, should have known that the Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

64. According to the Identity Theft Resource Center's report covering the year 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[5]

65. The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant itself. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[6]

---

[5] *See* "Identity Theft Resource Center's 2021 Annual Data Breach Report Sets New Record for Number of Compromises," Jan. 24, 2022, available at https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data- breach-report-sets-new-record-for-number-of-compromises/ (last visited Nov. 18, 2025).
[6] IBM, "Cost of a data breach 2022: A million-dollar race to detect and respond," available at https://www.ibm.com/reports/data-breach (last visited Nov. 18, 2025).

66.     As a business in possession of its current and former customers' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. Such consequences include the significant costs imposed on Plaintiff and Class Members due to a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

67.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being wrongfully disclosed to cybercriminals.

68.     Given the nature of the Data Breach, it was foreseeable that Plaintiff's and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiff's and Class Members' names.

69.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on its network server(s), amounting to at least thousands of individuals' detailed Private Information, and, thus, the significant

number of individuals who would be harmed by the exposure of that unencrypted data.

70.     Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

71.     The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, credit and bank fraud, and the like.

**D. Defendant was Required, but Failed to Comply with FTC Rules and Guidance.**

72.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

73.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses like Defendant. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to

correct any security problems.[7]

74.     The FTC's guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[8]

75.     The FTC further recommends that companies not maintain confidential personal information, like PII, longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

76.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.  Orders resulting from these actions further

---

[7] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016),https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Nov. 18, 2025).
[8] *Id.*

clarify the measures business like Defendant must undertake to meet their data security obligations.

77.     Such FTC enforcement actions include actions against business that fail to protect individuals' Private Information like Defendant. *See, e.g., In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

78.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect sensitive personal information, like Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

79.     The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater

potential for analysis and profit."[9]

80.    Defendant failed to properly implement basic data security practices, in violation of its duties under the FTC Act.

81.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**E. Defendant Failed to Comply with Industry Standards.**

82.    A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

83.    The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data

---

[9] Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable),
http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf.

Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[10]

84.    In addition, the NIST recommends certain practices to safeguard systems[11]:

      a.  Control who logs on to your network and uses your computers and other devices.

      b.  Use security software to protect data.

      c.  Encrypt sensitive data, at rest and in transit.

      d.  Conduct regular backups of data.

      e.  Update security software regularly, automating those updates if possible.

      f.  Have formal policies for safely disposing of electronic files and old devices.

      g.  Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

85.    Further still, the Cybersecurity & Infrastructure Security Agency

---

[10] *See* Rapid7, "CIS Top 18 Critical Security Controls Solutions," available at https://www.rapid7.com/solutions/compliance/critical-controls/ (last visited Nov. 18, 2025).

[11] Federal Trade Commission, "Understanding The NIST Cybersecurity Framework," https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist- framework (last visited Nov. 18, 2025).

("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[12]

86.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01,

---

[12] Cybersecurity & Infrastructure Security Agency, "Shields Up: Guidance for Organizations," available at https://www.cisa.gov/shields-guidance-organizations (last visited Nov. 18, 2025).

PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

**F. Defendant Owed Plaintiff and Class Members a Common Law Duty to Safeguard their Private Information.**

87.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant's duty owed to Plaintiff and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure its computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' Private Information.

88.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

89.    Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner and act upon data security warnings and alerts in a timely fashion.

90.    Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

91.    Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

92.    Defendant failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. Defendant's actions and omissions represent a flagrant disregard of Plaintiff's and Class Members' rights.

### G. Plaintiff and Class Members Suffered Common Injuries and Damages due to Defendant's conduct.

93.    Defendant's failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately injured Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

94.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

95.     Plaintiff and Class Members are also at a continued risk because their Private remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its current and former students' Private Information.

96.     As a result of Defendant's ineffective and inadequate data security practices, the resulting Data Breach, and the foreseeable consequences of their Private Information ending up in criminals' possession, the risk of identity theft to Plaintiff and Class Members has materialized and is imminent, and they have all sustained actual injuries and damages, including, without limitation, (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of their bargain with Defendant; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information it collects and maintains.

### Present and Ongoing Risk of Identity Theft

97.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

98.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13]   The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

99.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

100.    The dark web is an unindexed layer of the internet that requires special software or authentication to access.[15]   Criminals in particular favor the dark web as

---

[13] 17 C.F.R. § 248.201 (2013).
[14] *Id.*
[15] *What Is the Dark Web?*, Experian, available at https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/.

it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[16]    This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

101.    A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the Private Information at issue here.[17]  The digital character of Private Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.[18]  As Microsoft warns "[t]he anonymity of the dark web lends itself

---

[16] *Id.*

[17] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web.

[18] *Id.; What Is the Dark Web?*, Experian, available at

well to those who would seek to do financial harm to others."[19]

102.   The unencrypted Private Information of Plaintiff and Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Plaintiff's and Class Members' Private Information.

103.   Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

104.   For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone

---

https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/.
[19] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web.

calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

105.   Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[20]

106.   One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[21]

---

[20] *Identity Theft and Your Social Security Number*, Social Security Administration, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf.

[21] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a

107. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

108. The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

109. Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

110. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam

---

fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited Nov. 18, 2025).

telemarketers).

111.   The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

112.   Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice:

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[22]

113.   According to the FBI's Internet Crime Complaint Center (IC3) 2019

---

[22] Erika Harrell, *Bureau of Just. Stat.*, U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft*, 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last visited Nov. 18, 2025).

Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[23]

114.   Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[24]   Yet, Defendant failed to rapidly report to Plaintiff and the Class that their Private Information was stolen.

115.   Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

116.   In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

117.   Further complicating the issues faced by victims of identity theft, data

---

[23] *See* https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120.
[24] *Id.*

thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

### *Loss of Time to Mitigate the Risk of Identify Theft and Fraud*

118. As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

119. In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record

120. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

121. Plaintiff and Class Members have spent, and will spend additional time

in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

122.   These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[25]

123.   Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

---

[25] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited Nov. 18, 2025).

### *Diminished Value of Private Information*

124.   Personal data like Private Information is a valuable property right.[26]  Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

125.   An active and robust legitimate marketplace for personal information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[27] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[28, 29] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[30]

126.   As a result of the Data Breach, Plaintiff's and Class Members' Private

---

[26] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[27] https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[28] https://datacoup.com/.

[29] https://digi.me/what-is-digime/.

[30] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

Information, which has an inherent market value in both legitimate and black markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where holds significant value for the threat actors.

127.    However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

### Reasonable and Necessary Cost of Credit and Identify Theft Monitoring

128.    To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered due to the Data Breach.

129.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of information involved, and the *modus operandi* of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or insurance; or filing false unemployment claims.

130.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her information

was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

131.   Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel their cards and request a replacement.[31] The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

132.   Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

133.   The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

---

[31] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

*Loss of Benefit of the Bargain*

134. Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain.

135. When agreeing to provide their Private Information, which was a condition precedent to receiving loans from Defendant, Plaintiff and Class Members, as customers, understood and expected that they were receiving adequate security to protect the Private Information they were required to provide.

136. In fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members were compensated in a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

## CLASS ACTION ALLEGATIONS

137. Plaintiff brings this nationwide class action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b).

138. Plaintiff proposes the following nationwide class definition:

> All individuals residing in the United States whose Private Information were compromised as a result of the Data Breach (the "Class").

139. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded

also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

140.    Plaintiff hereby reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

141.    Numerosity. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of at least thousands individuals whose Private Information was compromised in Data Breach.

142.    Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Class Members' Private Information;

    b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.    Whether Defendant's data security systems prior to and during the Data

Breach were consistent with industry standards;

e.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.  Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.  Whether Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.  Whether Defendant's conduct was negligent;

k.  Whether Defendant breached implied contracts for adequate data security with Class Members;

l.  Whether Defendant was unjustly enriched by retention of the monetary benefits conferred on it by Class Members; and

m. Whether Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

143. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class

Member, was compromised in the Data Breach.

144.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

145.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

146.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action

presents far fewer management difficulties, conserves judicial and party resources, and protects the rights of each Class Member.

147.   Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and declaratory relief are appropriate on a class-wide basis.

148.   Likewise, particular issues are appropriate for certification pursuant to Federal Rule of Civil Procedure 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

   a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

   b. Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

   c. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

   d. Whether Defendant failed to take commercially reasonable steps to safeguard customer Private Information; and

   e. Whether adherence to FTC data security guidelines and/or measures recommended by data security experts would have reasonably prevented the Data Breach.

149.   Finally, all members of the proposed Class are readily ascertainable.

Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified by Defendant.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and the Class)**

150.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 150 above as if fully set forth herein.

151.   Defendant required Plaintiff and Class Members to submit sensitive, confidential Private Information to Defendant as a condition of receiving loans from Defendant.

152.   Plaintiff and Class Members provided their Private Information to Defendant prior to the Data Breach.

153.   Defendant had full knowledge of the sensitivity of the Private Information to which it was entrusted, and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed to unauthorized persons.

154.   Defendant owed a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting the Private Information it collected from them.

155.   Plaintiff and Class Members were the foreseeable victims of any

inadequate data safety and security practices by Defendant.

156.    Plaintiff and Class Members had no ability to protect their Private Information in Defendant's possession.

157.    By collecting, transmitting, and storing Plaintiff's and Class Members' Private Information Defendant owed Plaintiff and Class Members a duty of care to use reasonable means to secure and safeguard their Private Information, to prevent the information's unauthorized disclosure, and to safeguard it from theft or exfiltration to cybercriminals. Defendant's duty included the responsibility to implement processes by which it could detect and identify malicious activity or unauthorized access on its networks or servers.

158.    Defendant owed a duty of care to Plaintiff and the Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that controls for its networks, servers, and systems, and the personnel responsible for them, adequately protected Plaintiff's and Class Members' Private Information.

159.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between it and its students, which is recognized by laws and regulations including but not limited to the FTC Act and the common law. Defendant was able to ensure its network servers and systems were sufficiently protected against the foreseeable harm a data breach would cause Plaintiff and Class

Members, yet it failed to do so.

160.   In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

161.   Pursuant to the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

162.   Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices and procedures to safeguard Plaintiff's and Class Members' Private Information, and by failing to ensure the Private Information in its systems was encrypted and timely deleted when no longer needed.

163.   Plaintiff's and Class Members' injuries resulting from the Data Breach were directly and indirectly caused by Defendant's violations of the FTC Act.

164.   Plaintiff and Class Members are within the class of persons the FTC Act is intended to protect.

165.   The type of harm that resulted from the Data Breach was the type of harm the FTC Act is intended to guard against.

166.   Defendant's failure to comply with the FTC Act constitutes negligence *per se*.

167.   Defendant's duty to use reasonable care in protecting Plaintiff's and Class Members' confidential Private Information in its possession arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to reasonably protect such Private Information.

168.   Defendant breached its duties of care, and was grossly negligent, by acts of omission or commission, including by failing to use reasonable measures or even minimally reasonable measures to protect the Plaintiff's and Class Members' Private Information from unauthorized disclosure in this Data Breach.

169.   The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

    b.   Maintaining and/or transmitting Plaintiff's and Class Members' Private Information in unencrypted and identifiable form;

    c.   Failing to implement data security measures, like adequate, phishing-resistant MFA for as many systems as possible, to safeguard against known techniques for initial unauthorized access to network servers and systems;

    d.   Failing to adequately train employees on proper cybersecurity protocols;

    e.   Failing to adequately monitor the security of its networks and

48

systems;

f.  Failing to periodically ensure its network system had plans in place to maintain reasonable data security safeguards;

g.  Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

h.  Failing to adequately notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate damages.

170.  But for Defendant's wrongful and negligent breaches of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised because the malicious activity would have been prevented, or at least, identified and stopped before criminal hackers had a chance to inventory Defendant's digital assets, stage them, and then exfiltrate them.

171.  It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would injure Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in Defendant's industry.

172.  It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would cause them one or more types of injuries.

173.  As a direct and proximate result of Defendant's negligence, Plaintiff

and Class Members have suffered and will suffer injuries, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft, or the imminent and substantial risk of identity theft or fraud; (d) out-of-pocket and lost opportunity costs associated with attempting to mitigate the consequences of the Data Breach, including lost time; (e) loss of benefit of the bargain; (f) emotional harm due to their Private Information's disclosure to cybercriminals; and (g) the continued and certainly increased risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

174.   Plaintiff and Class Members are entitled to damages, including compensatory, consequential, punitive, and nominal damages, as proven at trial.

175.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) provide adequate and lifetime credit monitoring to Plaintiff and all Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

176.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through

150 above as if fully set forth herein.

177.    Defendant required Plaintiff and Class Members to provide and entrust their Private Information to Defendant as a condition of and in exchange for receiving loans from Defendant.

178.    When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such Private Information.

179.    Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Defendant when they agreed to provide their Private Information to Defendant, and Defendant agreed to reasonably protect it, as manifested through its conduct in the mandatory collection of Private Information.

180.    The implied contracts that Plaintiff and Class Members entered into with Defendant included Defendant's promises to protect Private Information it collected from Plaintiff and Class Members, or created on its own, from unauthorized disclosures, and those implied through its conduct in the mandatory collection of Private Information. Plaintiff and Class Members provided their Private Information to Defendant in reliance on its promises, express and implied.

181.    Under the implied contracts, Defendant promised and was obligated to (a) employ and compensate Plaintiff and Class Members; and (b) protect Plaintiff's and Class Members' Private Information provided and/or created in connection with

51

their loans. In exchange, Plaintiff and Class Members agreed to provide Defendant with their Private Information.

182.   Defendant promised and warranted to Plaintiff and Class Members to maintain the privacy and confidentiality of the Private Information it collected from them, and to keep such information safeguarded against unauthorized access and disclosure.

183.   Defendant's adequate protection of Plaintiff's and Class Members' Private Information was a material aspect of these implied contracts with Defendant.

184.   Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

185.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with industry standards and relevant laws and regulations, including the FTC Act.

186.   Plaintiff and Class Members, who contracted with Defendant for loans, including reasonable data protection and provided their Private Information to Defendant, reasonably believed and expected that Defendant would employ adequate data security to protect that Private Information.

187.   A meeting of the minds occurred when Plaintiff and Class Members

agreed to, and did, provide their Private Information to Defendant and agreed Defendant would receive the benefit of their Private Information and compensate Plaintiff and Class Members in an amount that accounted for Defendant's the protection of their Private Information.

188.   Plaintiff and Class Members performed their obligations under the contracts when they provided their Private Information and/or labor to Defendant.

189.   Defendant materially breached its contractual obligations to protect the Private Information it required Plaintiff and Class Members to provide when that Private Information was unauthorizedly disclosed in the Data Breach due to Defendant's inadequate data security measures and procedures.

190.   Defendant materially breached its contractual obligations to deal in good faith with Plaintiff and Class Members when it failed to take adequate precautions to prevent the Data Breach and failed to promptly notify Plaintiff and Class Members of the Data Breach.

191.   Defendant materially breached the terms of its implied contracts, including but not limited to by failing to comply with industry standards or the standards of conduct embodied in statutes or regulations like Section 5 of the FTC Act, and by failing to otherwise protect Plaintiff's and Class Members' Private Information, as set forth *supra*.

192.   The Data Breach was a reasonably foreseeable consequence of

Defendant's breaches of these implied contracts with Plaintiff and Class Members.

193.   Due to Defendant's failures to fulfill the data protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendant, and instead received compensation of a diminished value compared to that described in the implied contracts. Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of their compensation with data security protection they expected and provided their Private Information for, and that which they received.

194.   Had Defendant disclosed that its data security procedures were inadequate or that it did not adhere to industry standards for cybersecurity, neither Plaintiff, Class Members, nor any reasonable person would have contracted with Defendant.

195.   Plaintiff and Class Members would not have provided and entrusted their Private Information to Defendant in the absence of the implied contracts between them and Defendant.

196.   Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to adequately or reasonably safeguard and protect their Private Information.

197.   As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members and the attendant Data Breach, Plaintiff

and Class Members have suffered injuries and damages as set forth herein and have been irreparably harmed.

198. Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

199. Plaintiff re-alleges and incorporates by reference all the allegations contained in paragraphs 1 through 150 above, as if fully set forth herein.

200. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided their Private Information to Defendant, which Defendant used and depended on to operate its business and generate revenue, as well as to fundraise and market its services. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

201. Defendant knew Plaintiff and Class Members conferred a benefit upon it, and accepted that benefit by (i) retaining the Private Information and using it to benefit financially, and (ii) compensating Plaintiff and Class Members in a manner that was supposed to account for Defendant's costs on data security to protect the Private Information it collected.

202. Defendant failed to secure Plaintiff's and Class Members' Private

55

Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information or labor provided Defendant.

203.   Defendant acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

204.   Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information, or paid to Plaintiff and Class Members if such data security was not provided. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting the funds it should have either paid to Plaintiff and Class Members or used to ensure adequate data security for their Private Information to its own pocket instead.

205.   Defendant further enriched itself through using the Private Information it required Plaintiff and Class Members provide for fundraising, marketing, and revenue-generating staffing and employment functions, while failing to provide a reasonable level of security to protect the Private Information it used to its own benefit, to Plaintiff' and Class Members' detriment.

206.   Plaintiff and Class Members, on the other hand, suffered as a direct and

proximate result of Defendant's decision to prioritize its own financial condition over the requisite security and the safety of customers' Private Information.

207.   Under the circumstances, it would be unjust for Defendant to retain the benefits that Plaintiff and Class Members conferred upon it.

208.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injuries and damages as set forth herein.

209.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT IV: BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff and the Class)

210.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 150 above as if fully set forth herein.

211.   Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

212.   As a sophisticated loan provider, Defendant stands in a position of confidence with respect to its customers, including Plaintiff and Class Members, and

thus had and has a fiduciary relationship with Plaintiff and Class Members.

213.    Because of that fiduciary relationship, Defendant was provided with and stored private and valuable Private Information related to Plaintiff and the Class, which it was required to maintain in confidence.

214.    Defendant owed a fiduciary duty under common law to Plaintiff and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

215.    As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of Plaintiff's and the Class Members' Private Information it collected, used, and stored in its systems.

216.    Customers like Plaintiff and Class Members have a privacy interest in personal financial matters, and Defendant had a fiduciary duty not to disclose financial data concerning its customers.

217.    Defendant had the ability to protect and safeguard the Private Information in its possession against disclosure, which was superior to Plaintiff' and Class Members' ability to do the same, given that they were required to entrust their Private Information to Defendant without any ability to direct Defendant's measures of protecting that data, while in a subordinate position vis-à-vis Defendant.

218.  As a result of the parties' fiduciary relationship, Defendant had possession and knowledge of confidential Private Information of Plaintiff and Class Members, information not generally known.

219.  Plaintiff and Class Members did not consent to nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

220.  Defendant breached the fiduciary duties of utmost care it owed to Plaintiff and Class Members, including by failing to use reasonable measures or even minimally reasonable measures to protect the Plaintiff's and Class Members' Private Information from unauthorized disclosure in this Data Breach.

221.  Defendant's specific breaches of its fiduciary duties of utmost care to protect Plaintiff's and Class Members' Private Information include, but are not limited to, the following:

> a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;
>
> b. Maintaining and/or transmitting Plaintiff's and Class Members' Private Information in unencrypted and identifiable form;
>
> c. Failing to implement data security measures, like adequate, phishing-resistant MFA for as many systems as possible, to safeguard against known techniques for initial unauthorized access to network servers and systems;
>
> d. Failing to adequately train employees on proper cybersecurity protocols;
>
> e. Failing to adequately monitor the security of its networks and

systems;

    f.   Failing to periodically ensure its network system had plans in place to maintain reasonable data security safeguards;

    g.   Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

    h.   Failing to adequately or timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate damages.

222.   But for Defendant's wrongful breach of its fiduciary duties owed to Plaintiff and Class Members, their privacy, confidences, and Private Information would not have been compromised.

223.   As a direct and proximate result of Defendant's breaches of fiduciary duties owed to Plaintiff and Class Members, Plaintiff and Class Members have suffered and will suffer injuries, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft, or the imminent and substantial risk of identity theft or fraud; (d) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (e) loss of benefit of the bargain; (f) anxiety and emotional harm due to their Private Information's disclosure to cybercriminals; and (g) the continued and certainly increased risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and

adequate measures to protect it.

224. Plaintiff and Class Members are entitled to damages, including compensatory, consequential, punitive, and nominal damages, as proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment as follows:

A.     An Order certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.     Awarding Plaintiff and the Class damages that include applicable compensatory, actual, exemplary, and punitive damages, as allowed by law;

C.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.     Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.     Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

F.     Awarding attorneys' fees and costs, as allowed by law,

G.     Awarding pre- and post-judgment interest, as provided by law;

H.     Granting Plaintiff and the Class leave to amend this complaint to

conform to the evidence produced at trial; and,

    I.      Any and all such relief to which Plaintiff and the Class are entitled.

## **JURY TRIAL DEMAND**

    Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: November 18, 2025        Respectfully submitted,

        */s/ Gregory A. Mitchell*
        Gregory A. Mitchell (P68723)
        E. Powell Miller (P39487)
        **THE MILLER LAW FIRM, P.C.**
        950 West University Drive
        Rochester, MI 48307
        Tel: (248) 841-2200
        gam@millerlawpc.com
        epm@millerlawpc.com

        Gary Klinger
        **MILBERG, PLLC**
        227 W. Monroe Street, Suite 2100
        Chicago, Illinois 60606
        (866) 252-0878
        gklinger@milberg.com

        *Counsel for Plaintiff and the Putative Class*